FILED
2026 Oct-30 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**JEAN CLAUDE DEMOSTENE,**
Petitioner,

**v.**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,** *et al.*,
Respondents.

**Case No. 1:26-cv-1840-CLM-SGC**

# MEMORANDUM OPINION

Jean Claude Demostene has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging Respondents' ability to detain him without a bond hearing. (Doc. 1). For the reasons stated within, the court **GRANTS IN PART** Count 1 of Demostene's petition and **REFERS** Count 2 of the petition to the magistrate judge for review on a non-expedited basis. The court **DISMISSES** U.S. Immigration and Customs Enforcement ("ICE") and the Attorney General of the United States as Respondents. The court **DIRECTS** the Clerk of Court to **SUBSTITUTE** Daniel Finn, Jr., in his official capacity as the New Orleans Field Office's Acting Supervisory Detention and Deportation Officer for ICE ERO, and Brian Acuna, in his official capacity as the Acting Director of ICE's New Orleans Field Office, for Respondent Warden of the Etowah County Jail. On or before **November 6**, **2026,** Finn and Acuna must either (a) bring Demostene before an immigration judge for an individualized bond hearing, or (b) release him from custody.

## BACKGROUND

Demostene is a 61-year-old citizen of Haiti. (Doc. 1, ¶ 28). In February 2023, Border Patrol encountered Demostene at the port of entry in Laredo, Texas and classified him as an arriving alien who was applying for admission into the United States. (*See* Doc. 6-4, p. 1). Demostene was then paroled into the United States for one year pending removal proceedings. (Doc. 6-1, p. 4).

Demonstene was not taken into custody, nor did he surrender himself into custody, at the end of his one-year parole. Instead, on October 6, 2026, ICE officers encountered Demostene and four others in Albertville, Alabama. The officers determined that Demostene was not a United States citizen and did not have permission to live within the United States. (*Id.*, pp. 3–4). So the officers detained Demostene and transferred him to the Etowah County Detention Center for processing. (*Id.*, p. 4).

On October 8, 2026, Demostene filed this habeas petition raising two claims against ICE, the U.S. Attorney General, and the Warden of the Etowah County Detention Center. (Doc. 1). Count 1 alleges that Respondents have violated the Immigration Nationality Act, 8 U.S.C. §§ 1225(b), 1226(a), by detaining him without a bond hearing. (*See id.*, ¶¶ 39–41). Count 2 asserts that Demostene's detention violates his rights under the Due Process Clause of the Fifth Amendment. (*See id.*, ¶¶ 42–46). On October 12, 2026, Demostene was transferred to the Adams County Correctional Center in Mississippi.

## JURISDICTION

At the time Demostene filed his habeas petition, he was being detained at the Etowah County Detention Center, which is within this judicial district. Thus, this court has jurisdiction over Demostene's petition even though he has since been moved to Mississippi. *See Rumsfeld v. Padilla*, 542 U.S. 426, 440–41 (2004), *discussing Ex parte Endo*, 323 U.S. 283, 304–05 (1944). But because Demostene is no longer housed at the Etowah County Detention Center, the Warden of the Etowah County Detention Center is no longer the proper respondent. Nor are ICE or the Attorney General appropriate respondents because they are "remote supervisory officials" and not Demostene's "immediate custodian." *See id.* at 435–36. Rather, the court finds that Daniel Finn Jr., the New Orleans Field Office's Acting Supervisory Detention and Deportation Officer for ICE ERO, and Brian Acuna, the Acting Director of ICE's New Orleans Field Office, are proper respondents. The New Orleans Field Office oversees the Adams County Correctional Center, so the court finds that Finn and Acuna are Demostene's immediate custodians who the court can order to produce him. As a result, the court will **DISMISS** Respondents ICE, the U.S. Attorney General, and Etowah County Warden. The court will **SUBSTITUTE** Finn and Acuna as the appropriate respondents.

## DISCUSSION

Turning to the merits of Demostene's petition, Demostene asserts that because he was apprehended within the interior of the United States his detention is governed by 8 U.S.C. § 1226(a), which means he is entitled to a bond hearing. Respondents disagree and say that the mandatory detention provision in 8 U.S.C. § 1225(b)(2)(A) applies because Demostene was initially paroled into the country and is thus classified as an applicant for admission who was first encountered at a port of entry, *see* 8 U.S.C. § 1182(d)(5)(A). This court agrees with Respondents' reading of the statute. But as explained below, that reading is foreclosed by binding panel precedent of the Eleventh Circuit.

### A. *Hernandz Alvarez's* reading of Sections 1225 and 1226

Generally, two sections of the INA govern the detention of aliens. Title 8, Section 1226(a) says that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." For aliens detained under § 1226(a), the Government "may continue to detain the arrested alien" or "release the alien on" either bond or conditional parole. *See* 8 U.S.C. § 1226(a)(1) & (2).

But certain aliens are subject to mandatory detention without bond under the previous section, 8 U.S.C. § 1225(b)(2)(A), which says, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

In *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026), the Eleventh Circuit addressed whether 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)(A) applies to aliens detained within the interior of the United States. In a 2-1 panel decision, the Court held that "§ 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." *See id.* at 1276. While the Circuit Court recognized that the *Hernandez Alvarez* petitioners were classified as "applicants for admission" under the INA, the court held that § 1225 did not apply to them because they were not seeking lawful entry into the United States at the time they were apprehended. *See id.* at 1271–72, 1276. In reaching this conclusion,

the court reasoned that Congress's use of the "present participle ('seeking') underscores that" § 1225(b)(2)(A) requires "some active and temporally ongoing step or process on the part of the alien." *Id.* at 1268. Thus, the court said that § 1225(b)(2)(A) does not apply to aliens who at the time of apprehension are not "taking any cognizable step to obtain the rights and privileges of lawful entry." *See id.* at 1269.

**B. Application to Parolees**

The petitioners in *Hernandez Alvarez* entered the country undetected and thus were not temporarily released on parole. So the facts do not squarely align with our facts—*i.e.*, detained at the border, released on parole, then apprehended for reasons having nothing to do with parole. And district courts within the Eleventh Circuit have split on whether *Hernandez Alvarez* applies to previously paroled aliens like Demostene. In this district, Judge Axon has twice found that *Hernandez Alvarez* dictates that aliens like Demostene are entitled to a § 1226(a) bond hearing. *See Neri v. Warden*, 2026 WL 1707620, at *2 (N.D. Ala. June 12, 2026); *Pina Meza v. Powell*, 2026 WL 2271299, at *1 (N.D. Ala. Aug. 6, 2026). Other district courts, however, have determined that even under *Hernandez Alvarez*'s construction of the INA, an alien who presented himself at the border, was paroled into the United States, and later apprehended after his parole terminated is subject to detention under § 1225(b)(2). *See, e.g.*, *Flores v. Warden, Broward Transitional Ctr.*, 2026 WL 1437166, at *1 (S.D. Fla. May 21, 2026) (Altman, J.).

While the court maintains its disagreement with the majority's reading of the INA in *Hernandez Alvarez*, the court agrees with Demostene that *Hernandez Alvarez* requires this court to apply § 1226 (rather than § 1225) to his detention. In *Hernandez Alvarez,* the majority accepted that petitioners arrested within the interior of the country were "applicants for admission" as that term is used in § 1225. The majority's *ratio decidendi – i.e.,* its reason for deciding – that such petitioners must nonetheless be detained under § 1226(a) was that "§ 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." 175 F.4th at 1276.

Applying the same reasoning leads to the same result here. No one questions that Demostene is an "applicant for admission" under § 1225(a). Section 1182(d)(5)(A) plainly says so:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (highlight added). In my opinion, this is a Congressional directive to treat aliens coming off parole like "any other applicant for admission" under § 1225(a).

But again, the *Hernandez Alvarez* majority accepted that its petitioners were "applicants for admission," yet applied § 1226 because those petitioners were not seeking lawful admission at the moment they were arrested. *See* 175 F.4th at 1261, 1276. So establishing that Demostene was an applicant for admission when he was arrested is not enough. Rather, Respondents must also show that Demostene "was seeking lawful entry into the United States after inspection by an immigration officer ***when he was arrested***." *Id.* at 1261 (emphasis added). And while Demostene may have sought entry at the border in 2023, Respondents have failed to establish that Demostene "was pursuing any object, let alone 'lawful entry,' when he was detained following a traffic stop." *See id.* So the court finds that Demostene was not an alien seeking admission simply because he was detained at the border and released on parole several years before he was found in Alabama and re-detained. Because Demostene fails to meet the Eleventh Circuit's definition of "an alien seeking admission," § 1226(a) controls his detention.

### C. Bond hearing

Respondents concede that aliens detained under § 1226(a) may seek a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("[A]liens detained under § 1226(a) receive bond hearings at the outset of detention."). The court will therefore **GRANT** Count 1 of Demostene's petition to the extent that the court **ORDERS** that Demostene be afforded a bond hearing. But the court **DENIES** Demostene's request that he be immediately released from custody because that Demostene's detention falls under § 1226(a) does not entitle him to immediate release. *See E.A.L.A v. Powell*, 2026 WL 1494518, at *2 (N.D. Ala. May 28, 2026). The court will **REFER** to the magistrate judge for further consideration the merits of the Due Process Clause challenge brought in Count 2 of Demostene's petition.

## CONCLUSION

The court believes this result contradicts the INA's text. But the court is bound to follow binding Circuit precedent while it stands, even if it believes that doing so takes us further down the wrong path.[1]

As a result, the court **GRANTS IN PART** Count 1 of Demostene's petition (doc. 1) and **DISMISSES** Respondents U.S. Immigration and Customs Enforcement, the Attorney General of the United States, and Warden of the Etowah County Jail as Respondents. The court **DIRECTS** the Clerk of Court to **SUBSTITUTE** as the proper respondents Daniel Finn, Jr., in his official capacity as the New Orleans Field Office's Acting Supervisory Detention and Deportation Officer for ICE ERO, and Brian Acuna, in his official capacity as the Acting Director of ICE's New Orleans Field Office. The court **REFERS** Count 2 of the petition to the magistrate judge.

1. The court **ORDERS** Finn and Acuna to either (a) bring Demostene before an immigration judge for a bond hearing on or before **November 6, 2026**, or (b) release Demostene from custody.

---

[1] The Supreme Court may soon decide the issue, thus setting us all on the same path. *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert granted sub nom.*, *Rhoney v. Barbosa da Cunha*, --- S. Ct. ----, 2026 WL 2942994 (U.S. Oct. 1, 2026) (No. 26-104).

2. Demostene's counsel must receive at least 48 hours' notice of the hearing but only if they enter their appearance in the Executive Office of Immigration Review's online filing system in time to receive the notice.

3. If either (a) Demostene is not given a bond hearing on or before **November 6, 2026**, or (b) an immigration judge denies bond for reasons that conflict with current Eleventh Circuit precedent (*i.e.*, *Hernandez Alvarez*), then the court **ORDERS** that Finn and Acuna release Demostene with reasonable conditions of supervision.

The court **DIRECTS** Finn and Acuna to file a notice on or before **November 10, 2026**, reporting on the results of the individualized bond hearing or telling the court that Demostene has been released from custody.

The court will enter a separate order that carries out this ruling.

**DONE** and **ORDERED** on October 30, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE